FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2013 MAR 18 P 1:41
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| DIRIUSS REDD, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CV 113-124 |
| ) | (Formerly CR 112-055) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate at the Federal Correctional Institution in Estill, South Carolina, has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. This case is now before the Court on Respondent's motion to dismiss Petitioner's § 2255 motion, (doc. no. 3), to which Petitioner has filed a response, (doc. no. 5). Respondent has filed a reply to Petitioner's response. (Doc. no. 6.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Respondent's motion to dismiss be granted, that Petitioner's § 2255 motion be **DISMISSED** without an evidentiary hearing, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

### I. BACKGROUND

In February 2012, a federal grand jury indicted Petitioner on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). United States v. Redd, CR 112-055, doc. no. 3 (S.D. Ga. Feb. 8, 2012) (hereinafter "CR 112-055").

On April 30, 2012, Petitioner, represented by appointed counsel Mr. Samuel F. Maguire, pleaded guilty to one count of possession of a firearm by a convicted felon. (See CR 112-055, doc. nos. 39-40.) Petitioner's plea agreement included a broad appeal and

collateral attack waiver provision that stated in relevant part:

> [T]o the maximum extent permitted by federal law, the defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the conviction and sentence in any post-conviction proceeding, including a § 2255 proceeding, on any ground, except that: the defendant may file a direct appeal of his sentence if it exceeds the statutory maximum; and the defendant may file a direct appeal of his sentence if, by variance or upward departure, the sentence is higher than the advisory sentencing guideline range as found by the sentencing court.

(Id., doc. no. 40, p. 4.) In addition, the plea agreement stated that Petitioner would receive a two-point reduction for acceptance of responsibility and that the government would file an additional one-point reduction for acceptance of responsibility. (Id. at 2.)[1] By signing the plea agreement, Petitioner attested that he had read the plea agreement and it accurately set forth the terms and conditions of his agreement with the government. (Id. at 12.)

During the change of plea hearing, Judge Hall reviewed the single-count indictment. (Id., doc. no. 51, p. 5.) Petitioner testified under oath that he understood what he was charged with, had discussed and reviewed the indictment with Mr. Maguire after having seen it, and had as much time to speak with Mr. Maguire about the charge as he wanted. (Id. at 6.) Petitioner also testified that he was satisfied with the help he had received from Mr. Maguire. (Id. at 9.) Judge Hall then questioned Petitioner and determined that he was competent to plead guilty. (Id. at 6-8, 22.)

Judge Hall next explained the rights that Petitioner would waive by pleading guilty, and Petitioner affirmed he clearly understood those rights. (Id. at 8-11.) Petitioner further

---

[1]The plea agreement stated that the government would move for the additional one-point reduction, "provided the defendant truthfully admits the conduct comprising the offense of conviction, has fully complied with the terms of the pretrial release, if applicable, and this plea agreement, has not engaged in criminal conduct subsequent to arrest or initial appearance in this matter, and truthfully admits or does not falsely deny any additional relevant conduct for which the defendant is accountable under the United States Sentencing Guidelines." (Id., doc. no. 40, p. 2.)

2

testified that he had reviewed the plea agreement with Mr. Maguire before he signed it, that Mr. Maguire was authorized to negotiate the plea agreement for him, and that he understood that he was admitting the truth of the facts contained in the agreement. (Id. at 12.) In addition, Judge Hall reviewed the appeal and collateral attack waiver with Petitioner, summarizing it as follows:

> You have agreed to waive your right to appeal your conviction and sentence directly. And also you've agreed to waive the right to appeal—to attack your conviction and sentence in a post-conviction proceeding on any ground whatsoever. However, should the Government appeal your sentence—which it has the right to do—or should your final sentence be higher than the maximum penalty for this case or should your final sentence exceed the sentencing guideline range that applies to your case, in any of those three events, you would have the right to directly appeal your sentence. Other than that, you are giving up or waiving your appellate rights by signing this agreement.

(Id. at 13.) In response to a question from Judge Hall, Petitioner affirmed that he had agreed to the waiver as summarized by Judge Hall. (Id. at 14.) Petitioner also affirmed that other than the promises the government made in the plea agreement, no one else on behalf of the government promised him anything in order to plead guilty. (Id.)

Judge Hall then explained the statutory maximum penalties for the crime to which Petitioner was pleading guilty, which were ten years imprisonment, a fine of up to $250,000, up to three years of supervised release, and a $100 special assessment. (Id. at 14.) Petitioner affirmed that he understood such penalties. (Id. at 15.) Judge Hall then proceeded to explain to Petitioner that a probation officer would prepare a Presentence Investigation Report ("PSI"), which Judge Hall would rely upon to determine Petitioner's sentence, as well as the applicability and advisory nature of the United States Sentencing Guidelines ("U.S.S.G."). (Id. at 15-17.) Petitioner also affirmed that no one had made a prediction, promise, prophecy or represented to him that he would receive a specific sentence. (Id. at 20-21.)

3

Next, Judge Hall reviewed the elements of the charge to which Petitioner was pleading guilty and explained that the government would have to prove those elements beyond a reasonable doubt in order to obtain a conviction. (Id. at 17-18.) After having the elements read to him, Petitioner affirmed that he understood, and when Judge Hall asked him if his conduct would satisfy those elements, Petitioner answered, "Yes, sir." (Id. at 18.) Judge Hall then heard a government witness's presentation of a factual basis for the guilty plea, the truth of which Petitioner affirmed. (Id. at 18-21.)

Judge Hall asked Petitioner if he still wanted to plead guilty to Count One of the indictment because he was, in fact, guilty of the crime charged in Count One, to which Petitioner responded, "Yes, sir." (Id. at 21-22.) Judge Hall thus found that Petitioner was competent, that he fully understood the charge against him, and that his decision to plead guilty was voluntary, knowing, "and not the result of any force, pressure, threats, or promises other than the promises made by the Government in the plea agreement." (Id. at 22.) Judge Hall then found Petitioner guilty of the offense to which he was pleading. (Id.)

At sentencing, which was held on June 28, 2012, Judge Hall found, consistent with the PSI,[2] that Petitioner's total offense level was 21 and his criminal history category was III, which resulted in a Guidelines range of 46 to 57 months of imprisonment, one to three years of supervised release, a $7,500.00 to $75,000.00 fine, and a special assessment of $100.00. (Id., doc. no. 52, p. 5.) Judge Hall noted that Petitioner's final offense level included a full three-point reduction for acceptance of responsibility. (Id.) Judge Hall sentenced Petitioner

---

[2]Mr. Maguire stated at sentencing that his client had filed one factual objection to the PSI, in regards to whether Petitioner had obtained a General Education Development ("GED") diploma. However, Mr. Maguire agreed that the PSI calculation was correct because the PSI correctly stated that Petitioner asserted he had obtained the diploma at 16 years old but the Technical College System of Georgia was unable to locate the record. (Id. at 3-5.)

4

to a 50-month term of imprisonment, a fine of $2,000.00 after considering the factors set forth in U.S.S.G. § 5E1.2(d), a special assessment of $100.00, and three years of supervised release. (Id. at 10-12.) Judge Hall also reiterated that Petitioner had waived the right to appeal or to attack the sentence in any post-conviction proceeding. (Id. at 13-14.) Judgment was entered on July 2, 2012. (Id., doc. no. 48.) Pursuant to the appeal waiver, Petitioner did not appeal his case.

Petitioner then filed the instant § 2255 motion, signed on July 5, 2013 and docketed on July 26, 2013, raising four grounds for relief. (Doc. no. 1, pp. 1-2.) In Ground One, Petitioner claims he received ineffective assistance of counsel because Mr. Maguire "failed to appear"[3] at his change of plea hearing and failed to explain to him the terms of his plea agreement – of which he claims to be totally unaware until the day of his change-of-plea hearing. (Id. at 2-4.)

In Ground Two, Petitioner claims he received ineffective assistance of counsel because Mr. Maguire failed to accompany him to the PSI interview, which purportedly caused him to lose a full three-point reduction at sentencing for acceptance of responsibility. (Id. at 4-6.) Petitioner claims that Mr. Maguire's presence was necessary because he had "mitigating information," which Petitioner explained in a later filing with this Court was an affidavit of Denzel Bell that "cleared [Petitioner] of owning the firearm for which the [probation officer] based his decision to deny me acceptance of responsibility points."[4] (Id.; doc. no. 5, p. 3.)

---

[3]Despite Petitioner's claim, the record shows that Mr. Maguire was present at Petitioner's change of plea hearing. (See doc. nos. 38, 51.)

[4]As noted above, Petitioner did in fact receive a full three-point reduction for acceptance of responsibility. (Id., doc. no. 52, p. 5.)

In Ground Three, Petitioner claims he received ineffective assistance of counsel at sentencing because Mr. Maguire failed to challenge the classification of one of his prior convictions as a felony. (Doc. no. 5, pp. 6-7.) In Ground Four, Petitioner asserts that his sentence is improper in light of Alleyne v. United States, 133 S. Ct. 2151 (2013), in that certain unenumerated "facts" that were not submitted to the jury and found beyond a reasonable doubt were used to increase his sentence beyond the statutory minimum sentence. (Id. at 8-9.) Petitioner also requests an evidentiary hearing on his motion. (Id. at 9-10.)

Respondent filed a motion to dismiss, contending that Petitioner's § 2255 motion is untimely, Alleyne is inapplicable to Petitioner's case, and the claims are barred both by the collateral attack waiver set forth in the plea agreement and by Petitioner's knowing and voluntary guilty plea. (Doc. no. 3.) On the timeliness issue, Respondent contends its "highly unlikely" that Petitioner submitted his motion prior to the expiration of the statute of limitations. (Id.) In support, Respondent presents the declaration of Tony W. Brown, a correctional systems officer employed in FCI-Jesup's mailroom, and the certified mail log from the prison on the days that Petitioner would have delivered his motion, to show that it is "monumentally more likely" that Petitioner delivered his motion to prison officials after the expiration of his statute of limitations. (See generally doc. no. 3.)

Petitioner answered Respondent's motion to dismiss, contending that the motion was placed in the mail but returned by the USPS when one of the stamps fell off en route. Additionally, Petitioner reasserted the grounds enumerated in his motion and stated that the collateral attack waiver does not bar his claims because he was only "paying lip-service to the court," counsel told him "not to make waves," Petitioner did not learn of the plea deal until he arrived at court the day of the change-of-plea hearing, and that his counsel caused

him to lose his full three-point reduction for acceptance of responsibility at sentencing because he withheld Mr. Bell's affidavit. (See generally doc. no. 5.)

In apparent recognition of its somewhat tenuous argument on timeliness, Respondent filed a reply, contending that even without reaching the timeliness issue, Petitioner's motion is barred entirely by the collateral attack waiver, and his claimed ignorance of the other terms of plea agreement are "fatally contradicted by his sworn testimony during his plea colloquy." (Doc. no. 6, p. 1.)

## II. DISCUSSION

### A. There Is No Need for an Evidentiary Hearing Because Petitioner's Claims Are Barred from Review, Lack Merit as a Matter of Law, or Are Otherwise Affirmatively Contradicted by the Record.

Petitioner requests an evidentiary hearing in his § 2255 motion to investigate his claims that he received ineffective assistance of counsel. (Doc. no. 1, pp. 9-10.) "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989). An evidentiary hearing is not required if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. § 2255(b). Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts only conclusory allegations. Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004); see also Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (noting that petitioner is not entitled to an evidentiary hearing if his claims "are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible"). With regard to Petitioner's ineffective assistance claims, the Eleventh Circuit has recognized

7

that an evidentiary hearing "is often required for development of an adequate record" for ineffective assistance claims. Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Nonetheless, this general rule does not require the Court to hold an evidentiary hearing every time an ineffective assistance of counsel claim is raised. Id.

As described in detail below, the Court finds that Petitioner's claims are barred from review, lack merit as a matter of law, or are otherwise affirmatively contradicted by the record. Accordingly, Petitioner's request for an evidentiary hearing should be denied.

### B. By Knowingly and Voluntarily Agreeing to the Collateral Attack Waiver, Petitioner Waived His Claims in Grounds Two, Three, and Four.

Grounds Two, Three, and Four of the instant § 2255 motion are precluded by the waiver provision in the plea agreement, in which Petitioner waived his right to collaterally attack his conviction and sentence. It is well settled that a waiver of the right to collaterally attack a sentence and conviction is only enforceable if the waiver is knowing and voluntary. United States v. Warner-Freeman, 270 F. App'x 754, 757 (11th Cir. 2008) (*per curiam*); see also United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993).[5] "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333. If the government meets this burden, then an appeal and collateral attack waiver is enforceable. See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (*per curiam*) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about

---

[5] Case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings. See Bushert, 997 F.2d at 1345; see also Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1365-67 (N.D. Ga. 2004).

8

waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1146-47 (11th Cir. 1997).

Here, Respondent has demonstrated the existence of a valid collateral attack waiver. The plea agreement signed and verified by Petitioner fully set forth that, as a condition of his guilty plea, he was waiving any right to collateral attack of his sentence and conviction or the knowing and voluntary nature of his guilty plea. (See CR 112-055, doc. no. 40, p. 4 ("[T]o the maximum extent permitted by federal law, the defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the conviction and sentence in any post-conviction proceeding, including a § 2255 proceeding . . . .").) Furthermore, Judge Hall thoroughly went over Petitioner's plea agreement during the plea colloquy, specifically reviewing the waiver provision. (Id., doc. no. 51, p. 13.) After Judge Hall concluded his review of the plea agreement, Petitioner acknowledged that he understood and agreed with the terms of the plea agreement as explained by Judge Hall. (Id. at 14.)

Therefore, the record before the Court shows that Judge Hall specifically questioned Petitioner about the waiver provision, and that Petitioner fully understood its significance such that the collateral attack waiver was knowing and voluntary. Weaver, 275 F.3d at 1333. While Petitioner would have the Court ignore his responses to Judge Hall's questions, "solemn declarations in open court [at a guilty plea hearing] carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Thus, the collateral attack waiver bars the

claim in Ground Four that Petitioner's sentence is improper in light of Alleyne v. United States, 133 S. Ct. 2151 (2013).[6]

The collateral attack waiver also bars Grounds Two and Three, wherein Petitioner alleges ineffective assistance of counsel. The Court is aware certain ineffective assistance of counsel claims can survive a valid collateral attack waiver, but "only when the claimed assistance directly affected the validity of that waiver or the plea itself." Williams v. United States, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005) (quoting United States v. White, 307 F.3d 506, 508-09 (5th Cir. 2002)). Here, in Ground Two, Petitioner claims Mr. Maguire caused him to lose a full three-point reduction at sentencing for acceptance of responsibility by advising Petitioner to speak to the probation officer preparing the PSI without Mr. Maguire present and withholding the alleged affidavit of Denzel Bell. In Ground Three, Petitioner claims Mr. Maguire failed to challenge the classification of one of his prior convictions as a felony at sentencing. Because Grounds Two and Three challenge the assistance provided at sentencing, they are not related to the validity of Petitioner's waiver or plea and thus do not survive the collateral attack waiver. See Williams, 396 F.3d at 1342 n.2.[7]

In sum, because Petitioner's claims in Grounds Two, Three, and Four do not call into question the validity of his guilty plea or the collateral attack waiver, they are barred by the collateral attack waiver. See id. Therefore, Respondent's motion to dismiss should be

---

[6] In Alleyne, the jury found that the defendant had used or carried a firearm during and in relation to a crime of violence, but did not indicate a finding that the firearm was brandished, which would have carried with it a longer mandatory minimum sentence. Alleyne, 133 S. Ct. at 2156. The presentence report recommended a sentence which reflected the mandatory minimum sentence for cases in which a firearm had been brandished. Id. The court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." Id. at 2155.

[7] Additionally, Ground Four does not survive the collateral attack waiver under this exception because Petitioner does not challenge Mr. Maguire's assistance in Ground Four.

10

granted as to Grounds Two, Three, and Four of the § 2255 motion.

### C. Even if Petitioner's Claims in Grounds Two and Four Survived the Collateral Attack Waiver, They Do Not Entitle Petitioner to Relief.

Even if Petitioner's claims in Grounds Two and Four survived the collateral attack waiver, which they do not, neither ground is sufficient to entitle Plaintiff to relief. In Ground Two, Plaintiff alleges that Mr. Maguire caused him to lose a full three-point reduction at sentencing for acceptance of responsibility by (1) advising Petitioner to speak to the probation officer preparing the PSI without Mr. Maguire present, and (2) withholding the alleged affidavit of Denzel Bell, which purportedly exonerates Petitioner from the charge to which he pled guilty.

Petitioner's argument that he lost his full three-point reduction is clearly belied by the record, which shows Petitioner's final offense level included a full three-point reduction for acceptance of responsibility. (CR 112-055, doc. no. 52, p. 5.) Additionally, even if it were true that he did not receive this reduction, Mr. Maguire's alleged absence from the PSI interview does not constitute ineffective assistance. See Phillips v. United States, CV 310-072, 2011 WL 3022557, *7 (S.D. Ga. June 29, 2011) *report and recommendation adopted*, CV 310-072, 2011 WL 3022551 (S.D. Ga. July 22, 2011) (finding that PSI interviews "are not considered a 'critical stage of the criminal proceedings,' and the Sixth Amendment right to effective assistance of counsel therefore does not guarantee Petitioner the right to have counsel present during such an interview.")

As to the additional allegation in Ground Two that Mr. Maguire should have provided the affidavit of Mr. Bell that purportedly cleared Petitioner of owning the firearm, this also does not entitle Petitioner to relief. Assuming again that Petitioner did not receive the reduction, Petitioner fails to show how submitting an affidavit to blame another for

11

owning the firearm would have led him to receive a reduction for acceptance of responsibility. Indeed, it is likely Petitioner would have lost the full three-point reduction he did, in fact, receive had he submitted such an affidavit.

With respect to Ground Four, even if it were not barred by the collateral attack waiver, Alleyne is inapplicable to Petitioner's case. (Doc. no. 3, pp. 3-4.) In Alleyne, the jury did not indicate a finding that the firearm was brandished, which would have carried with it a longer mandatory minimum sentence, however the presentence report recommended a sentence which reflected the mandatory minimum sentence for cases in which a firearm had been brandished. Alleyne, 133 S. Ct. at 2156. The court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." Id. at 2155. Alleyne does not apply to Petitioner for two reasons. First, Petitioner was not subject to a mandatory minimum sentence, but instead pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), which subjected him to a statutory penalty of no more than 10 years in prison. (Doc. no. 40, p. 1; doc. no. 51, p. 14.) Indeed, Petitioner admitted every fact necessary for the imposition of a sentence within that range in his guilty plea. (Doc. no. 40, pp. 1, 4, 12.) Second, Alleyne is not retroactively applicable to cases on collateral review. See Rhodes v. United States, CV 113–158, 2013 WL 5797641, at *2 (S.D. Ga. Oct. 28, 2013) (Hall, J.) ("Alleyne is not retroactively applicable to cases on collateral review."); see also Doby v. United States, CV 113–152, 2013 WL 5564147, at *3 (S.D. Ga. Oct. 7, 2013) (Bowen, J.) (same).

**D. Ground One, the Only Claim to Survive the Collateral Attack Waiver, Is Without Merit Because Petitioner's Guilty Plea Was Knowing and Voluntary.**

The only claim that survives the collateral attack waiver is Ground One, in which Petitioner challenges the validity of his guilty plea itself, alleging it was not knowing and voluntary because Mr. Maguire "failed to appear" at his change of plea hearing and failed to explain to him the terms of his plea agreement – of which he claims to have been totally unaware until the day of his change-of-plea hearing. (Doc. no. 1, pp. 1-4.)

**a. Standard for Enforceability of Guilty Plea.**

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563, 569 (1989). In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows:

> "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights." A plea of guilty "cannot support a judgment of guilt unless it was voluntary in a constitutional sense."
> Aside from the obvious involuntariness of a coerced plea, the Supreme Court has identified two other ways that a defendant's guilty plea may be involuntary in a constitutional sense:
>
>> A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or

13

> proof that he in fact understood the charge, the
> plea cannot be voluntary in this latter sense.
>
> As the Supreme Court has plainly instructed, the voluntariness requirement is not satisfied unless the defendant receives real notice of the true nature of the charged crime: "[C]learly the plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"

United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997) (internal citations omitted).

The Eleventh Circuit has further explained that, for a guilty plea to be made knowingly and voluntarily, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error, he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

### b. Because Petitioner's Guilty Plea Is Enforceable, Ground One Is Without Merit.

Here, the extensive plea colloquy conducted by Judge Hall addresses each of the aforementioned "core principles." Moriarty, 429 F.3d at 1019. Judge Hall informed Petitioner, in clear terms of the charge to which he was pleading guilty, as well as the maximum penalties that might be imposed in the event of Petitioner's conviction, and Petitioner testified that he understood the charge and the maximum penalties. (CR 112-055, doc. no. 51, pp. 5, 14-15.) Petitioner also testified that his conduct would satisfy the elements of the crime to which he was pleading guilty, and he admitted to the facts stated in the government's factual basis and the indictment. (Id. at 17-18, 22.) Judge Hall also provided a

14

detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights. (Id. at 8-12.) Petitioner testified that no one had made him any promises to get him to plead guilty, nor had anyone forced, threatened, or pressured him to do so. (Id. at 3, 17.) Petitioner also testified that he had reviewed the plea agreement with Mr. Maguire before he signed it, that Mr. Maguire was authorized to negotiate the plea agreement for him, that he had as much time to speak with Mr. Maguire about the charge as he wanted, and that he was satisfied with the help he had received from Mr. Maguire. (Id. at 6, 9, 12.) Thus, Judge Hall's thorough plea colloquy ensured that Petitioner understood both the nature of the charge and the consequences of his guilty plea, and that Petitioner was not coerced into pleading guilty. See Moriarty, 429 F.3d at 1019.

As such, Petitioner's arguments that he did not know about the plea deal, had no time to study it before the plea hearing, and Mr. Maguire's failure to attend the hearing left him "to pay lip service to the Court," are contradicted by the record of the plea hearing and Petitioner's own testimony at the plea hearing. As noted above, "solemn declarations in open court [at a guilty plea hearing] carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge, 431 U.S. at 74; see also United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) ("[I]f the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely.") Judge Hall clearly advised Petitioner as to the terms of the guilty plea and Petitioner, accompanied by Mr. Maguire, testified that he had as much time as he wanted to review the charge, had reviewed the plea deal with Mr. Maguire, and was satisfied with the help he had received from Mr. Maguire. Thus, given his former sworn testimony,

Petitioner cannot now claim that the plea was unknowing and involuntary.

Thus, the Court finds that the record is clear as to the knowing and voluntary entry of Petitioner's guilty plea, and that Ground One of Petitioner's motion is without merit. Accordingly, the Court finds that Petitioner is not entitled to relief on the grounds set forth in his § 2255 motion.[8]

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Respondent's motion to dismiss be granted, that Petitioner's § 2255 motion be **DISMISSED** without an evidentiary hearing, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 18th day of March, 2014, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE

---

[8]Because the Court has determined that Petitioner's claims are barred or otherwise lack merit, the Court need not reach Respondent's contention that Petitioner's § 2255 motion is untimely.